**Stanley D. SNYDER, Petitioner,**

v.

**Phillip L. SULLIVAN, Respondent.**

**No. 83SC448.**

Supreme Court of Colorado,
En Banc.

Sept. 3, 1985.

Richard Y. Neiley, Jr., Blockwick, Garn & Neiley, Aspen, for petitioner.

Barry D. Edwards, Aspen, for respondent.

DUBOFSKY, Justice.

We granted certiorari in this case to review the determination of the Pitkin County District Court that Colorado county courts have no jurisdiction to decree specific performance in contractual disputes involving less than $5000. We reverse.

## I.

The defendant, Phillip Sullivan, owned a sole proprietorship known as "Cloud 9 Jeep Tours," which he operated under a Public Utilities Commission (PUC) "Certificate to Operate as a Common Carrier by Motor Vehicle for Hire." In December 1981, the defendant agreed in writing to sell all of his right, title and interest in the business to the plaintiff, Stanley Snyder. The plaintiff agreed to place $1300 in escrow and apply to the PUC for a rate increase. The defendant promised that, once a rate increase was granted, he would execute and deliver to the plaintiff a bill of sale and an application for authority to transfer the defendant's PUC certificate.[1]

On March 12, 1982, the plaintiff filed a complaint in county court for Pitkin County alleging that he had obtained a PUC rate increase and that the defendant had subsequently breached the 1981 sales agreement by refusing to execute and deliver the bill of sale and the application for authority to transfer the PUC certificate. The plaintiff also claimed that the defendant had fraudulently induced the plaintiff to enter the sales agreement. The plaintiff prayed for damages and a decree of specific performance ordering the defendant to transfer the documents as required by the agreement.

---

**1.** The agreement also contained a covenant not to compete. Because much of the county court's oral order of specific performance was not transcribed, it is impossible to tell whether that order included the covenant not to compete as well as the transfer and execution of documents. Before this court, the plaintiff challenges only that portion of the district court order denying the county court's jurisdiction to require the execution and transfer of documents. Therefore, we need not determine whether the county court's decree of specific performance extended to the non-competition covenant or, if so, whether the county court had jurisdiction to enter such an order.

Following trial to the county court, the court concluded as a matter of law that the defendant had breached the sales agreement and directed a verdict in favor of the plaintiff on his claim for specific performance. The court submitted to the jury the questions of whether the defendant committed fraud, and what damages, if any, the plaintiff had suffered. The jury found for the plaintiff and awarded him $5000 in damages.

▮▮▮▮ The defendant appealed the county court judgment to the Pitkin County District Court under §§ 13–6–310 and –311, 6 C.R.S. (1973 & 1984 Supp.) and C.R.C.P. 411. The district court affirmed the jury verdict in favor of the plaintiff but reversed the decree of specific performance on the ground that the county court had no jurisdiction to entertain original proceedings for injunctive relief. The plaintiff petitioned for certiorari, arguing that the district court erred in reversing the specific performance award. We agree.[2]

## II.

The Colorado Constitution establishes county courts, Colo. Const. art. VI, § 1, and limits county court jurisdiction:

County courts shall have such civil, criminal, and appellate jurisdiction as may be provided by law, provided such courts shall not have jurisdiction of felonies or in civil cases where the boundaries or title to real property shall be in question. Appellate review by the supreme court or the district courts of every final judgment of the county courts shall be as provided by law.

Colo. Const. art. VI, § 17. Under the constitutional provision allowing jurisdiction to be conferred upon the county courts by statute, the General Assembly has granted to the county courts "concurrent original jurisdiction with the district court in civil actions, suits, and proceedings in which the debt, damage, or value of the personal property claimed does not exceed five thousand dollars...." § 13–6–104(1), 6 C.R.S. (1984 Supp.). However, the General Assembly has restricted the county courts' limited civil jurisdiction. § 13–6–105, 6 C.R.S. (1973 & 1984 Supp.). Of particular relevance is the limitation in section 13–6–105(1)(f), 6 C.R.S. (1973 & 1984 Supp.) on the county court's power to issue injunctions. Since 1979 that section has provided:

**2.** The defendant claims that the district court order is not final and therefore cannot be considered on certiorari review. *See* C.A.R. 52(a). The defendant raises two arguments in support of this claim: 1) the district court judgment is not final under C.R.C.P. 411 because the judgment remanded the case to the county court for further action, and 2) the district court's judgment is not final because the court never ruled upon the defendant's motion for reconsideration of the judgment. Both contentions lack merit.

First, C.R.C.P. 411(a)(5) states:

Unless there is further review by the Supreme Court upon writ of certiorari and pursuant to the rules of such court, after final disposition of the appeal by the district court, the judgment on appeal therein shall be certified to the county court for action as directed by the district court, except upon trials de novo held in the district court or in cases in which the judgment is modified, in which cases the judgment shall be that of the district court and enforced therefrom.

Here, the county court judgment was modified and the district court entered an order denominated a judgment. The judgment finally disposed of the issues raised and the rights of the

parties. The remand of the case to the county court for entry of judgment was ministerial and did not deprive the district court judgment of its final character.

Second, the failure of the district court to rule upon the motion for reconsideration did not deprive its judgment of finality. The district court judgment was issued on November 10, 1983 and noted in the register of actions on November 17, 1983. The motion for reconsideration was filed December 8, 1983. This motion was in effect a motion to alter or amend the judgment, and such motions must be filed no later than fifteen days after entry of judgment. C.R.C.P. 59(e). The motion was therefore untimely and could have no effect upon the district court judgment. *See Wesson v. Johnson,* 622 P.2d 104 (Colo.App.1980); *see also* C.A.R. 4(a) (running of time for filing notice of appeal terminated by "timely" motion to alter or amend judgment). Absent a timely motion to alter or amend judgment, the district court judgment was final at the time it was entered. A judgment is final if it completely determines the rights of the parties and leaves nothing further for the court to do. *Harding Glass Co. v. Jones,* 640 P.2d 1123, 1125 n. 2 (Colo.1982).

The county court shall have no civil jurisdiction except that specifically conferred upon it by law. In particular, it shall have no jurisdiction over the following matters:

.  .  .  .  .  .  .

(f) Original proceedings for the issuance of injunctions, except as provided in section 13–6–104(5) or (6) [orders to prevent domestic abuse or to prevent assaults and threatened bodily harm] and except as otherwise specifically authorized in this article or, if there is no authorization, by rule of the Colorado supreme court.[3]

Before 1979, the statute only permitted the General Assembly to expand the county courts' jurisdiction to entertain original proceedings for injunctive relief.[4]

Before the 1979 amendment of section 13–6–105(1)(f), this court adopted C.R.C.P. 370, which provides in part:

If a judgment directs a party to execute a transfer of documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party on application of the party entitled to performance, the clerk shall issue a writ of attachment against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt.

The premise of C.R.C.P. 370 is that county courts possess the jurisdiction to entertain proceedings in which the requested relief consists of an order directing the performance of a specific act, such as a transfer of documents.

Although C.R.C.P. 370 could be read to conflict with the statutory prohibition against county court jurisdiction over original proceedings for injunctive relief because it was adopted at a time when this court had no power to alter by rule the jurisdictional bar erected in section 13–6–105(1)(f), we believe that the apparent conflict dissipates given the well-established distinction between injunctions and decrees of specific performance. An injunction is generally a preventive and protective remedy, aimed at future acts; it is not intended to redress past wrongs. *Board of County Commissioners of Pitkin County v. Pfeifer*, 190 Colo. 275, 546 P.2d 946 (1976); *Wyman v. Jones*, 123 Colo. 234, 228 P.2d 158 (1951); 42 Am.Jur.2d, *Injunctions* § 4 (1969). A decree of specific performance remedies a past breach of contract by fulfilling the legitimate expectations of the wronged promisee. *Thurmon v. Skipton*, 157 Colo. 423, 403 P.2d 211 (1965); 5A *Corbin on Contracts* § 1138 (1964); *Restatement (Second) of Contracts* § 357, comment a (1981). In interpreting the reference in section 13–6–105(1)(f) to "injunctions," we may presume that the General Assembly was aware of the legal distinction between injunctions and specific performance decrees. *See Smith v. Miller*, 153 Colo. 35, 39, 384 P.2d 738, 740 (1963) (legislature presumed to enact statutes with knowledge of existing law on the statutory subject). Therefore, we hold that section 13–6–105(1)(f) does not apply to decrees of specific performance, such as the order in this case directing the defendant to execute the bill of sale and the application for authority to transfer the PUC permit, and that C.R.C.P. 370 properly may be read with the understanding that county courts have jurisdiction to issue decrees of specific performance.

---

**3.** This court has the power to prescribe rules of civil procedure for the county courts. Colo. Const. art. VI, § 21; § 13–2–108, 6 C.R.S. (1984 Supp.); *Colorado River Water Conservation Dist. v. Rocky Mountain Power Co.*, 174 Colo. 309, 486 P.2d 438 (1971).

**4.** As originally promulgated, that section stated:

The county court shall have no civil jurisdiction except that specifically conferred upon it by law. In particular, it shall have no jurisdiction over the following matters:

.  .  .  .  .

(f) Original proceedings for the issuance of injunctions, except as specifically authorized in this article.
Ch. 45, sec. 5, 1964 Colo.Sess.Laws 409, 410.

Our interpretation of section 13–6–105(1)(f) and C.R.C.P. 370 is consistent with a common sense understanding of the operation of the county courts. *See* § 2–4–201, 1B C.R.S. (1980); *Allen v. Charnes,* 674 P.2d 378, 381 (Colo.1984) (courts must presume legislature intended reasonable result). County courts have jurisdiction over contractual disputes in which damages total less than $5000; county courts also have the authority to enforce lawful orders. § 13–6–104(1). In many cases subject to county court jurisdiction, specific performance may be necessary to grant full relief to the claimant. Only an inefficient and unreasonable jurisdictional scheme would permit the county courts to entertain contractual disputes but prevent the courts from granting full relief.[5]

The jurisdiction of the county courts to entertain proceedings for specific performance relief as described in C.R.C.P. 370 is encompassed within the general grant of civil jurisdiction contained in section 13–6–104(1); the prohibition against proceedings for injunctive relief contained in 13–6–105(1)(f) does not extend to proceedings for specific performance. The district court erred in holding that the county court lacked jurisdiction to decree specific performance in this case.

Judgment reversed.

---

**5.** We recognize that a mandatory injunction may require the parties to perform affirmative acts even in the absence of contractual duties. C.R.C.P. 65(f); 42 Am.Jur.2d *Injunctions* § 16 (1969). A mandatory injunction resembles specific performance in its requirement of affirmative performance. However, its essential purpose, like that of a negative injunction, is to preserve the status quo and prevent injury, rather than to redress past wrongs. *Id.;* 43 C.J.S., *Injunctions* § 8 (1978). Moreover, unlike specific performance, a mandatory injunction prescribes conduct that has not been defined by contract, and instead requires the court to choose a mode of performance from a wide range of possibilities. For this reason, mandatory injunctive relief is granted only in rare cases. *Atlantis Community, Inc. v. Adams,* 453 F.Supp. 825, 831 (D.Colo.1978). Because mandatory injunctions thus involve significantly different considerations than decrees of specific performance, and because this case involves only the latter form of relief, we do not decide today whether, in the absence of a rule adopted by this court, section 13–6–105(1)(f) divests the county court of jurisdiction to entertain proceedings for mandatory injunctions.